UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTERN AMERICA PROPERTIES, INC.,
a California corporation,

                 Plaintiff,         Case No.

v.                                 HON.

EXCEL ESCROW SERVICES, LLC, a
Michigan limited liability company; EXCEL
TITLE AGENCY, LLC, a Michigan limited
liability company; JANEL CHIPMAN, an
individual; METRO EQUITY GROUP, LLC,
a Michigan limited liability company; and
COREY HOWARD, an individual,

                 Defendants.
_____/

Paul F. Doherty (P36579)
Morris & Doherty, P.C.
Attorneys for Plaintiff
4000 Town Center, Suite 900
Southfield, MI  48075
(248) 353-7900
pdoherty@morris-dohertypc.com
_____/

## COMPLAINT

      Plaintiff, WESTERN AMERICA PROPERTIES, INC., a California corporation, through its attorneys, MORRIS & DOHERTY, P.C., states for its Complaint as follows:

### PARTIES AND JURISDICTION

      1.    Plaintiff, WESTERN AMERICA PROPERTIES, INC. ("WAP") is a corporation organized under the laws of the State of California, where it maintains its principal place of business.

2. Defendant, EXCEL ESCROW SERVICES, LLC ("EES"), is a limited liability company organized under the laws of the State of Michigan. Defendant EES's principal place of business is located in Oakland County, Michigan. Defendant EES's sole constituent member is Defendant, JANEL CHIPMAN ("Chipman"), who is a citizen of the State of Michigan and resides in Oakland County, Michigan.

3. Defendant, EXCEL TITLE AGENCY, LLC ("ETA"), is limited liability company organized under the laws of the State of Michigan. Defendant ETA's principal place of business is located in Oakland County, Michigan. ETA's constituent members are Defendant Chipman, Judith Stirneman, who is a citizen of the State of Michigan and resides in Oakland County, and Defendant, Jenny Kinnaird, who is a citizen of the State of Michigan and resides in Oakland County.

4. Defendant, METRO EQUITY GROUP, LLC ("MEG"), is a limited liability company organized under the laws of the State of Michigan. Defendant MEG's principal place of business is located in Las Vegas, Nevada. Defendant MEG's sole constituent member is Defendant, COREY HOWARD ("Howard"), who is a citizen of the State of Michigan and resides in Wayne County, Michigan.

5. This Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1332 because Plaintiff and Defendants, and each of them, are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 USC § 1391 because Defendants reside and conduct business in this judicial district.

**COMMON ALLEGATIONS**

7.      Upon information and belief, and for all times relevant hereto, there existed a unity of interest in ownership between Defendants EES, ETA and Chipman, such that any individuality and separateness between these Defendants did not exist, meaning that Defendants EES and ETA are the alter-ego of Defendant Chipman.  Additionally, or in the alternative and for all times relevant hereto, Defendant Chipman was the agent, servant, employee and/or representative of Defendants EES and ETA, and was acting with their express or implied knowledge, permission, consent or ratification of Defendants EES and/or ETA.

8.      Upon information and belief, and for all times relevant hereto, there existed a unity of interest and ownership existed between Defendants MEG and Howard, such that any individuality and separateness between Defendants MEG and Howard did not exist, meaning that Defendant MEG is the alter-ego of Defendant Howard.  Additionally, or in the alternative and for all times relevant hereto, Defendant Howard was the agent, servant, employee and/or representative of Defendant MEG, and was acting with the express and/or implied knowledge, permission, consent or ratification of Defendant MEG.

9.      On or about June 16, 2008, Plaintiff entered into a written contract with Defendant MEG entitled "Metro Equity Group Offer to Purchase Asset Agreement" ("Agreement").  **Ex. 1**.  The Agreement incorporated an "Exhibit A," a list of approximately 49 residential properties which Defendant MEG agreed to sell to or acquire for Plaintiff for the agreed upon price of $5,100,000.00, representing, according to Defendant MEG and Howard, 50% of the then current fair market value.

10.     Plaintiff was induced to enter into the contract by representations made by Defendant Howard that he was able to deliver deeds to certain residential properties in Southern

3

California and Nevada by purchasing such properties at a significant discount. Among other things, Defendant Howard represented he had unique contacts in the banking and asset management industries, such that he was able to secure properties at substantially discounted rates as compared to others in similar industries.

11. The Agreement also provided that Plaintiff was to "deposit with an [sic] Excel Title Company, a Land America agency, located in Huntington Woods, MI, the sum of 10% of purchase price." On or about June 23, 2008, Plaintiff transferred by wire $511,290.00 to Defendant ETA which had agreed to act as the escrow agent. On or about September 10, 2008, and without Plaintiff's knowledge or consent, Defendants ETA and Chipman transferred the deposit monies being held on Plaintiff's behalf into a bank account controlled by Defendant EES. These deposit monies were not used in full for the purchase of properties or other proper disbursements and, consequently, there is $374,890.00 due from Defendants ETA/EES/Chipman which these Defendants have failed and/or refused to return.

12. On or about September 12, 2008, Plaintiff transferred by wire $1,120,000.00 to Defendants EES/Chipman for the purchase of 9 residential properties located in Las Vegas, Nevada. Only 7 of the 9 properties closed, resulting in a balance being held by Defendant EES/Chipman in the amount of $649,800.00. Defendant EES/Chipman have failed and/or refused to return this amount to Plaintiff.

13. On or about May 11, 2009, Plaintiff transmitted $530,446.00 to Defendants EES/Chipman to be held pending the purchase of additional properties. No additional properties were purchased, no closings occurred, and Defendants/Chipman EES have failed and/or refused to return these funds.

14. Immediately after deposit of the monies recited above, Plaintiff, at great expense, conducted its due diligence with respect to the properties and, many times, determined that properties were not available and/or that Defendant MEG was unable or unwilling to transfer the properties. This scenario repeated itself on numerous occasions with respect to most properties Defendant MEG purportedly sought to sell and/or acquire for sale to Plaintiff.

15. Unbeknownst to Plaintiff, Defendant MEG was not attempting to acquire the properties at or near the agreed upon 50% of the asking price.

16. Based upon Defendant MEG's failure to perform, Plaintiff properly sought the return of its deposit monies, $1,555,136.00, which Defendants, and each of them, have failed to return.

17. Defendants EES/Chipman improperly disbursed Plaintiff's deposit monies to Defendants MEG/Howard and took fees for themselves without authorization from Plaintiff and with knowledge that closings had not taken place or that the conditions precedent for the release of the funds had not occurred.

## COUNT I

## BREACH OF AGREEMENT (EXPRESS AND IMPLIED)

18. Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 17 above.

19. When Defendants EES, ETA and Chipman accepted Plaintiff's money as an escrow agent, an implied contract arose pursuant to which these Defendants owed the following duties without limitation:

    a) hold Plaintiff's money in trust to be disbursed only upon express consent of Plaintiff;

5

    b) promptly return Plaintiff's money upon request or continue to hold it in trust until whatever disputes as to entitlement were resolved;

    c) not transfer any money to Defendants MEG, Defendant Howard or anyone else without first obtaining Plaintiff's consent.

20. Defendants EES and ETA breached the above and other implied contractual duties. As a direct, proximate and foreseeable result, Plaintiff has suffered damages, including, without limitation, loss of the principal amount of $1,555,136.00, loss of profits, loss of investment opportunity, and consequential losses.

## COUNT II

## BREACH OF CONTRACT

21. Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 20 above.

22. Pursuant to the Agreement, Defendant MEG owed the following duties, it being specifically agreed that time was of the essence:

    a) To sell or acquire for Plaintiff "all" properties listed on the Agreement's Exhibit A or mutually agreed upon substitute properties;

    b) Sell to Plaintiff "all" of the listed properties, or mutually agreed upon substituted properties, at 50% of their then current market value;

    c) Provide "all" agreed upon properties for closing on or before July 13, 2008, at which time Defendant MEG was to convey at closing clear and marketable title to the listed properties, free and clear of all taxes, liens and encumbrances.

23. Defendant MEG breached the Agreement in the ways recited above. As a direct, proximate and foreseeable result, Plaintiff has suffered damages, including, without limitation,

loss of the principal amount of $1,555,136.00, loss of profits, loss of investment opportunity, and consequential losses.

## COUNT III

### NEGLIGENCE/BREACH OF DUTY
### (DEFENDANTS EES, ETA AND CHIPMAN)

24. Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 23 above.

25. When Defendant ETA, EES and Chipman accepted Plaintiff's deposit monies, these Defendants assumed a fiduciary duty to Plaintiff to hold the money until such time that Plaintiff consented to its disbursement, return the funds to Plaintiff upon request, and otherwise act as a reasonably prudent escrow agent would under the same or similar circumstances, which included not disbursing Plaintiff's monies unless and until all contingencies in the Agreement had been met. Additionally, in light of the disputes between Plaintiff and Defendants MEG and Howard, Defendants ETA, EES and Chipman had a duty to maintain the escrow until resolution.

26. Defendants ETA, EES and Chipman were aware that Defendant Howard had been accused of fraud, misrepresentation, and had criminal charges pending against him relative to federal wire fraud charges, had been accused of misappropriating deposit monies from other investors like Plaintiff, and had been forced to settle numerous civil complaints involving misappropriation of deposit funds, all during the time Defendants were holding Plaintiff's money. As such, Defendants ETA, EES and Chipman owed Plaintiff a duty to disclose such facts and to, as a consequence, promptly return all deposit monies to Plaintiff.

27. In addition or in the alternative to the foregoing, Defendants ETA, EES and Chipman were aware that Defendants MEG and Howard were using Plaintiff's funds and deposit monies from investors for personal reasons unrelated to the purchase of properties. For example,

7

Defendant Chipman, for the benefit of Defendants ETA and/or EES, kept a "general ledger" in which Ms. Chipman would detail where deposit monies were being sent and in what amounts. As a consequence, Defendant Chipman knew that Defendants MEG and Howard were converting deposit monies of Plaintiff and others and using it for reasons unrelated to the purchase of properties. For example, without limitation, deposit monies were used to pay payroll of MEG, the personal travel expenses of Defendant Howard, attorney fees incurred by Defendant Howard in defense of criminal charges and in relation to civil complaints which had been filed against Defendant Howard and Defendant MEG. As a result of her knowledge concerning disbursements, Defendant Chipman should have held Plaintiff's monies in trust because she knew, or reasonably should have known, that any request by Defendant Howard for any of Plaintiff's deposit monies were based upon false and fraudulent reasons.

28.     In addition or in the alternative to the foregoing, Defendants ETA, EES and Chipman assumed a duty to disburse Plaintiff's deposit monies consistent with the Agreement. After assuming this duty, Defendants ETA, EES and Chipman misinterpreted or disregarded the Agreement and disbursed all of Plaintiff's deposit monies to MEG, Howard and/or others, even though none were entitled to any funds. The fact that the deposit monies were being misappropriated by Defendant Howard was apparent to Defendant Chipman based upon her general ledger entries which uniformly indicated that deposit monies were being used for personal business reasons by Defendants MEG and Howard.

29.     In addition or in the alternative to the foregoing, Defendants ETA, EES and Chipman were negligent when relying solely upon verbal information communicated by Defendant Howard concerning properties that were ready to close and/or Defendant Howard and/or Defendant MEG's right to Plaintiff's deposit monies. Among other things, Defendants

ETA, EES and Chipman were aware that other investors (*e.g.*, Mt. Tai Asset Management Corporation, Lincoln Properties, and Hanover Exchange) had alleged that Defendants MEG and Howard were unable to deliver properties and had otherwise engaged in fraudulent and deceptive business practices.

30. Defendants ETA, EES and Chipman were further negligent in transmitting all of Plaintiff's deposit monies to Defendants MEG/Howard when, under no circumstances, would either Defendant be entitled to any monies.

31. Defendants ETA, EES and Chipman were further negligent in failing to advise Plaintiff that all of its deposit monies had been requested by Defendant MEG and transmitting Plaintiff's deposit monies without written consent from Plaintiff.

32. As a direct, proximate and foreseeable result of the negligent acts of Defendants ETA, EES and Chipman, and breaches of duties and errors and omissions as recited above, Plaintiff has sustained damages, including the loss of the principal sum of $1,555,136.00, loss of profits, loss of investment opportunity, and consequential losses.

## COUNT IV

### CONVERSION

33. Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 32 above.

34. Plaintiff had and continues to have a property interest in all amounts transferred to Defendants, ETS, EES and/or Chipman.

35. Defendants MEG and Howard knew that Plaintiff had requested the return of its deposit monies and that Defendants EES/ETA/Chipman had wrongfully exerted dominion over Plaintiff's deposit monies and converted same. Alternatively, Defendants ETA, EES and/or

Chipman wrongfully transmitted Plaintiff's deposit monies to Defendant MEG when defendant MEG had no right to any funds.

36. When Defendant MEG obtained the monies, Defendant Howard knew that Defendant MEG had no right to it and had otherwise converted the funds. Thereafter, Defendant MEG transmitted the converted funds to Defendant Howard, who knew that the money had been converted from Plaintiff.

37. Defendant Howard's receipt of Plaintiff's deposit monies as recited above was a conversion under MCL 600.2919(a) and the common law. As a direct, proximate and foreseeable result of the conversion by Defendants as described above, Plaintiff has sustained damages and the loss of the principal amount of $1,555,136.00 and is, therefore, entitled to treble damages in the amount of $4,665,408.00.

WHEREFORE, Plaintiff requests that judgment be entered against Defendants ETA, EES and Chipman in the principal amount of $1,555,136.00, plus interest, costs and attorney fees. Plaintiff further requests judgment against Defendants MEG and Howard in the principal amount of $1,555,136.00, and that this amount be trebled pursuant to MCL 600.2919(a) to $4,6665,408.00, plus interest, costs and attorney fees so wrongfully sustained, and that any other relief that this Court deems appropriate and just be awarded.

                        MORRIS & DOHERTY, P.C.

                        s/ Paul F. Doherty
                        Paul F. Doherty (P36579)
                        Attorneys for Plaintiff
                        4000 Town Center, Suite 900
                        Southfield, MI 48075
                        (248) 353-7900
                        pdoherty@morris-dohertypc.com

Dated: October 20, 2010